# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **ALL METAL SALES, INC.**,<br>29260 Clemens Road<br>Westlake, Ohio 44145,<br><br>Plaintiff,<br><br>vs.<br><br>**ALL METAL SOURCE, LLC**,<br>25935 Detroit Road<br>Cleveland, Ohio 44145,<br><br>Defendant. | Case No.<br><br>Judge<br><br>**Complaint**<br><br>**Jury Demand Endorsed Hereon** |

For its complaint against defendant All Metal Source, LLC, plaintiff All Metal Sales, Inc. states:

## Summary Of Case

1. Thomas G. Klocker's business, All Metal Sales, Inc., ("All Metal"), sells specialty metals.

2. Over the last decade, All Metal has grown and become very profitable, and the ALL METAL trademark has gained a reputation in the market for its high quality metals and its fair prices.

{2419779:}

3. All Metal's success did not go unnoticed by Klocker's step-sister, Jessica Esparza, who wanted to duplicate her step-brother's success. But rather than work hard to obtain her own customers and establish her own reputation in the market, as Klocker had done, Esparza tried a shortcut. Hoping to confuse the market into thinking her business was somehow affiliated with her step-brother's well known business, about a year ago, she copied the ALL METAL mark by naming her business "All Metal Source, LLC." She offered the identical products as All Metal and she offered them to the same industries that All Metal serves.

4. Not surprisingly, Esparza succeeded in causing actual confusion in the market. In the short time All Metal Source, LLC, ("Source"), has used the ALL METAL mark, All Metal has learned of at least one customer who was confused into thinking Source was All Metal, and it knows there must be others given that Esparza is using the identical mark.

5. There can be no doubt that Esparza intended to copy the ALL METAL mark given that she knew how successful her step-brother had been using his company's mark and given the infinite number of non-deceptive business names available to her.

6. To end the market confusion and the ongoing, irreparable harm Source is inflicting upon All Metal, it respectfully asks the Court to order Source to stop using the ALL METAL mark or any other names confusingly similar to it and to grant the other requested relief.

## The Parties

7. Plaintiff All Metal Sales, Inc. ("All Metal") is an Ohio corporation with its principal place of business in Westlake, Ohio.

8. Defendant All Metal Source, LLC ("Source") is an Ohio limited liability company with its principal place of business in Westlake, Ohio.

## Jurisdiction And Venue

9. This Court has subject matter jurisdiction over All Metal's Lanham Act claim under 28 U.S.C. § 1331 and § 1338 because it arises under federal law.

10. This Court also has supplemental subject matter jurisdiction over All Metal's claims that do not arise under federal law under 28 U.S.C. §§ 1367, 1338(b), and 15 U.S.C. § 1121 because those claims are so related to All Metal's Lanham Act claim that together the claims are part of the same case or controversy under Article III.

11. This Court has personal jurisdiction over Source because it is an Ohio limited liability company, has a principal place of business in Ohio, is registered to do business in Ohio, has an Ohio statutory agent designated to receive service in Ohio, and has transacted business in Ohio.

12. Venue is proper under 28 U.S.C. § 1391 because Source is subject to personal jurisdiction in this district under Ohio law and, therefore, "resides" in the Northern District of Ohio according to federal law.

## Relevant Facts

**I. For Years, All Metal Worked To Strengthen Its ALL METAL Trademark**

13. In 1999, Thomas G. Klocker started a specialty metal distribution company that he named "All Metal Sales, Inc."

14. All Metal buys metals and then sells them to others who use the metals to construct buildings, infrastructure, machines, military equipment, and other items.

15. While All Metal sells many varieties of metals, it focuses on selling specialty metals, such as nickel, titanium, stainless steel, aluminum, Hastelloy, and Inconel.

16. All Metal sells metals in different sizes and shapes, including tubes, bars, plates, sheets, foils, and custom geometries.

17. All Metal owns the trademark ALL METAL, and has used that mark continuously since its inception in 1999 in promoting, facilitating, and making sales of its goods.

18. All Metal often includes the following large, stylized capital "A" with a swirl around it as a logo, typically appearing above its ALL METAL mark, on promotional materials, business cards, e-mails, and other documents and things that promote its sales:



19. Since 1999, All Metal has sold over $50 million in goods using the ALL METAL trademark.

20. Since 1999, All Metal has invested substantial money and other resources marketing, advertising, and promoting products under the ALL METAL trademark by, among other things, using the mark in directory listings, in paid-for advertisements, at trade shows, on letterhead, on purchase orders and invoices, on signage outside its office, and on product packaging delivered to customers.

21. All Metal owns and has the exclusive right to use the ALL METAL trademark in connection with the sale of metals by virtue of its development, creation, and use of that trademark and the timing thereof.

22. All Metal sells its goods under the ALL METAL trademark in Ohio, throughout the United States, and internationally.

23. All Metal's customers associate the ALL METAL trademark with All Metal's high quality service and goods and with its fair pricing.

24. Since 1999, All Metal has promoted its business on a website at www.allmetalsalesinc.com.

25. Since 1999, All Metal also has promoted its business by using a business directory called the "Thomas Register." Founded in 1898, the Thomas Register is a widely-used buying guide that reports names and descriptions of businesses that offer particular goods and services. Many engineers and industrial buyers throughout the United States use the Thomas Register to find vendors of goods or services.

26. Thomas Register used to be sold in multi-volume books. But in 2006, it ceased publishing books and made the Thomas Register directory freely available to the public on its website at www.thomasnet.com. Thomas Register calls that online directory ThomasNet.

27. All Metal has paid to list its business and its ALL METAL trademark in the Thomas Register books and on the ThomasNet web-based directory. In return, All Metal has derived publicity and business.

28. Since 1999, All Metal's sales have risen steadily, its reputation and goodwill have increased, and its ALL METAL name has grown in strength, value, and recognition.

II. **Source Copies The ALL METAL Mark.**

29. Recently, Klocker learned that his step-sister, Jessica Esparza, named her business "All Metal Source, LLC" in an intentional effort to confuse customers into thinking her business is part of, or associated with, All Metal's business and to trade upon All Metal's valuable goodwill.

30. Upon information and belief, in past years, Esparza started a metal distribution company, the name of which is presently unknown and which is no longer in operation.

31. Around 2009, hoping to duplicate the success of All Metal, Esparza copied the ALL METAL mark by renaming her business "All Metal Source, LLC" in a deliberate effort to trade upon the goodwill of All Metal and to capture some of its profitable business.

32. Esparza targeted All Metal's customers by offering the identical goods sold by All Metal.

33. Further confusing matters, Esparza headquartered Source in Westlake, Ohio, which is where All Metal is headquartered.

34. Sometime in 2009 or 2010, Source created a website at www.allmetalsource.com. Source's website specifically offers to sell at least 31 of the same metal varieties that All Metal offers on its website, including nickel, titanium, stainless steel, aluminum, Hastelloy, and Inconel, and even including more exotic metals, such as Greek Ascoloy 418, Carpenter 20, and Kovar.

35. Sometime in 2009 or 2010, Source paid to have advertising listings on the ThomasNet online business directory. Source configured its ThomasNet listing to promote and cause confusion between it and All Metal. Specifically, Source's ThomasNet listing creates confusion in the following ways:

    (a) Copying the ALL METAL mark in its business name, "All Metal Source, LLC."

(b) Referring to itself as a "stocking distributor," which is the identical descriptor used first by All Metal on ThomasNet.

(c) Offering at least 18 of the very same metals offered by All Metal on ThomasNet and on its website.

(d) Offering the same shapes of metals offered by All Metal on ThomasNet and on its website.

(e) Claiming to serve many of the same customers that All Metal lists on ThomasNet and on its website, including the aerospace, petrochemical, and military industries.

### III. Source's Copying The ALL METAL Mark Causes Actual Confusion

36. Ancilla Garcia-Coolidge is a buyer for the Naval Surface Warfare Center (United States Navy), which has been a customer of All Metal for over 10 years.

37. Garcia-Coolidge's office is in Bethesda, Maryland.

38. On or around August 30, 2010, Garcia-Coolidge became confused by Source's use of the ALL METAL mark and sent an e-mail to Source asking for a quotation from All Metal salesman, Jim Vandevelde. A true copy of an e-mail from Garcia-Coolidge attesting to her confusion is attached as **Exhibit A**.

39. Although obvious from Garcia-Coolidge's e-mail that she thought Source was All Metal, Source did not correct her mistake. Instead, Source exchanged e-mails with Garcia-Coolidge, hoping to make a sale. *See* Garcia-Coolidge e-mail.

40. When Source ignored Garcia-Coolidge's repeated requests that Vandevelde respond, Garcia-Coolidge became suspicious and telephoned All Metal, which explained that Source and All Metal were not connected in any way.

41. Garcia-Coolidge was surprised because Source's e-mails caused her to believe they were connected. But Garcia-Coolidge was relieved to learn there was no connection because she was displeased with the rudeness and otherwise poor service she received from Source.

IV. **Source Refuses To End The Confusion**

42. On September 2, 2010, All Metal's attorney sent a cease and desist letter to Esparza, which advised that Source's use of the ALL METAL mark was unlawful and had caused actual consumer confusion.

43. In response to the letter, at the apparent request of Esparza, Klocker's father, who is also the step-father of Esparza, left two voice mail messages for Klocker, stating, among other things, that Esparza had threatened to call the FBI and fabricate stories about Klocker unless he withdrew his legal challenge.

44. Sometime in late-September or early-October, 2010, Source replaced references to the name "All Metal Source" on Source's website with "A Metal Source." The name "A Metal Source," however remains confusingly similar to the ALL METAL mark, especially because for years All Metal has used a capital letter A as a logo, often in conjunction with the ALL METAL mark. Moreover, Source's other improper uses of the "All Metal" name continue, including, but not limited to, its www.allmetalsource.com web address; its ThomasNet listing's use of the name

"All Metal Source"; html coding or other online means causing links to Source's website to appear as "All Metal Source" in response to internet searches for "All Metal Source"; and its registration of the business name "All Metal Source LLC" with the Ohio Secretary of State.

45. By copying and using the ALL METAL mark and using the "A Metal" name, Source has caused actual consumer confusion, improperly obtained sales, deprived All Metal of sales, traded upon All Metal's goodwill, and diminished the value of that goodwill.

## Count One
*Unfair Competition Under The Lanham Act, 15 U.S.C. § 1125(a)(1)(A)*

46. All Metal incorporates by reference all allegations in all preceding paragraphs of this Complaint as if fully rewritten herein.

47. The ALL METAL mark is valid and legally enforceable.

48. All Metal owns the ALL METAL mark.

49. The ALL METAL mark is inherently distinct and also has acquired distinctiveness insofar as it identifies All Metal's products, and it identifies All Metal as the source of those products to purchasers, users, and others in the relevant channels of distribution throughout the United States.

50. All Metal has obtained substantial sales of products that incorporate the ALL METAL mark.

51. Source willfully has infringed the ALL METAL mark.

52. In promoting the sale of its goods and service on the internet, by e-mail, by telephone, and in-person, Source has used words, terms, names (including

the ALL METAL mark and the "A Metal" name), images, false designations of origin, false or misleading descriptions of fact, and false or misleading representations of fact that have caused, and are likely to cause, confusion, mistake, or deception as to Source's affiliation, connection, or association with All Metal. *See* 15 U.S.C. § 1125(a)(1)(A).

53. In promoting the sale of its goods and services on the internet, by e-mail, by telephone, and in-person, Source has used words, terms, names (including the ALL METAL mark and the "A Metal" name), images, false designations of origin, false or misleading descriptions of fact, and false or misleading representations of fact that have deceived or confused, and are likely to deceive and confuse, consumers into believing that Source's products and services originated with, are sponsored by, or are approved by All Metal. *See* 15 U.S.C. § 1125(a)(1)(A).

54. Source's use of the words "All Metal" and "A Metal" in conducting and promoting its business is confusingly similar to the ALL METAL mark.

55. Source has performed, and continues to perform, its deceptive and infringing acts willfully and in bad faith knowing or expecting they would be material to actual or potential buyers of metals and would likely deceive those customers.

56. Source performed its deceptive and infringing acts in interstate commerce by, among other things, using the internet, e-mail, and the ThomasNet nationwide business guide to facilitate those acts.

57. Source's deceptive and infringing acts are material and have influenced, and tend to influence, customers' purchasing decisions.

58. As a direct and proximate result of Source's deceptive and infringing acts, All Metal has suffered damages in an amount exceeding $25,000.

59. As a direct and proximate result of Source's deceptive and infringing acts, All Metal has suffered, and will continue to suffer, irreparable harm. Such harm will continue unless enjoined by this Court.

**Count Two**
*Ohio Deceptive Trade Practices Act, Ohio Revised Code § 4165.01 et. seq*

60. All Metal incorporates by reference all allegations in all preceding paragraphs of this Complaint as if fully rewritten herein.

61. Source's use of the words "All Metal" and "A Metal," its communications with potential and actual customers, its internet website, and its advertisements on ThomasNet and elsewhere, either individually or in the aggregate, are an effort by Source to pass off its goods and services as originating from or sponsored by All Metal. *See* Ohio Rev. Code § 4165.02(A)(1).

62. Source's use of the words "All Metal" and "A Metal," its communications with potential and actual customers, its internet website, and its advertisements on ThomasNet and elsewhere, either individually or in the aggregate, cause a likelihood of consumer confusion and misunderstanding as to the source, sponsorship, or approval of Source's goods and services. *See* Ohio Rev. Code § 4165.02(A)(2).

63. Source's use of the words "All Metal" and "A Metal," its communications with potential and actual customers, its internet website, and its advertisements on ThomasNet and elsewhere, either individually or in the aggregate, cause a likelihood of consumer confusion and misunderstanding as to the affiliation, connection, or association with All Metal. *See* Ohio Rev. Code § 4165.02(A)(3).

64. Source's use of the words "All Metal" and "A Metal," its communications with potential and actual customers, its internet website, and its advertisements on ThomasNet and elsewhere, either individually or in the aggregate, are representations that Source's goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have. *See* Ohio Rev. Code § 4165.02(A)(7).

65. Source's use of the words "All Metal" and "A Metal," its communications with potential and actual customers, its internet website, and its advertisements on ThomasNet and elsewhere, either individually or in the aggregate, are representations that Source has the sponsorship or approval of, and affiliation or connection with, All Metal, which it does not have. *See* Ohio Rev. Code § 4165.02(A)(7).

66. Source's violation of the Ohio Deceptive Trade Practices Act was, and is, willful.

67. Source's violation of the Ohio Deceptive Trade Practices Act entitles All Metal to monetary and injunctive relief under § 4165.03.

68. As a direct and proximate result of Source's deceptive trade practices, All Metal has suffered damages in an amount exceeding $25,000.

69. As a direct and proximate result of Source's deceptive trade practices, All Metal has suffered, and will continue to suffer, irreparable harm. Such harm will continue unless enjoined by this Court.

## Count Three
*Unfair Competition*

70. All Metal incorporates by reference all allegations in all preceding paragraphs of this Complaint as if fully rewritten herein.

71. Source's deceptive and infringing acts are unfair competition in violation of the common law of Ohio.

72. As a direct and proximate result of Source's unfair competition under Ohio common law, All Metal has suffered damages in an amount exceeding $25,000.

73. As a direct and proximate result of Source's unfair competition, All Metal has suffered, and will continue to suffer, irreparable harm. Such harm will continue unless enjoined by this Court.

## Count Four
*Unjust Enrichment*

74. All Metal incorporates by reference all allegations in all preceding paragraphs of this Complaint as if fully rewritten herein.

75. Through its deceptive and infringing conduct, Source has obtained benefits, including sales and goodwill, that rightfully belong to All Metal.

76. Source has not compensated All Metal for the benefits that Source wrongfully obtained, despite justice and equity requiring it to do so.

77. Source has unjustly enriched itself by obtaining and retaining the ill-gotten benefits of its deceptive and infringing conduct.

78. Source's receipt of the benefits of its deceptive and infringing acts is unjust enrichment.

79. As a direct and proximate result of Source's unjust enrichment, All Metal has suffered damages in an amount exceeding $25,000.

80. As a direct and proximate result of Souce's unjust enrichment, All Metal has suffered, and will continue to suffer, irreparable harm. Such harm will continue unless enjoined by this Court.

## Prayer for Relief

WHEREFORE, All Metal prays for judgment against Source as follows:

1. Compensatory damages in excess of $25,000, with the exact amount to be determined at trial, plus interest.

2. Attorneys' fees.

3. Treble damages.

4. Costs of the action.

5. Injunctive relief barring Source from:

    A. Using the words "All Metal," "A Metal," or any variation that bears a confusing similarity to the ALL METAL mark in connection with manufacturing, distributing, selling, offering for sale, holding for sale, or advertising any goods or services.

    B. Otherwise infringing All Metal's intellectual property rights in the ALL METAL mark;

{2396547:} 15

      C.      Otherwise engaging in any deceptive trade practice; or

      D.      Otherwise unfairly competing with All Metal.

6. An order that Source immediately remove all references to "All Metal," "A Metal,"  and any variation thereof that bears a confusing similarity to the ALL METAL mark from Source's internet website, from its ThomasNet listing, from any other internet publication relating to Source's goods or products, and from any signs, documents, advertisements, products, packaging, or labels.

7. An order that Source account to All Metal for any and all profits derived by Source by reason of Source's acts as complained of herein.

8. An order that Source deliver up for destruction all signs, documents, advertisements, packaging, labels, products, and any other matter bearing the words "All Metal," "A Metal," and any variation thereof that bears a confusing similarity to the ALL METAL mark.

9. Such other and further relief as allowed at law or in equity that the Court deems to be appropriate.

       s/ David B. Cupar
      David B. Cupar (OH 0071622)
        *dcupar@mcdonaldhopkins.com*
      Matthew J. Cavanagh (OH 0079522)
        *mcavanagh@mcdonaldhopkins.com*
      MCDONALD HOPKINS LLC
      600 Superior Avenue, East, Ste. 2100
      Cleveland, Ohio 44114
      T 216.348.5400
      F 216.348.5474

      *Counsel for All Metal Sales, Inc.*

## **Jury Demand**

Plaintiff All Metal Sales, Inc. hereby demands a jury trial for all issues so triable.

                                         s/ David B. Cupar
                                      *Counsel for All Metal Sales, Inc*